**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

SYLVIA LEE,                                 )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )        Case No. CIV-16-483-R
                                            )
NANCY A. BERRYHILL,[1]                      )
Acting Commissioner of                      )
Social Security Administration,             )
                                            )
                    Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff, Sylvia Lee, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB) and supplemental security income (SSI). This matter has been referred by United States District Judge David L. Russell for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I.    Procedural Background

On October 1, 2012, Plaintiff protectively filed an application for DIB. *See* Administrative Record (AR) [Doc. No. 11], 114. Plaintiff filed an application for SSI on October 9, 2012. *Id.* The Social Security Administration (SSA) denied the applications initially and on reconsideration. AR 182-183, 244-245. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated October 27, 2014. AR 111-130. The Appeals Council denied Plaintiff's request for review. AR 1-6. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff seeks judicial review of this final agency decision.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill, Acting Commissioner of Social Security Administration, is hereby substituted as the proper Defendant in this action.

**II.**    <u>**The ALJ's Decision**</u>

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluation process); *see also* 20 C.F.R. §§ 404.1520, 416.929. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since October 1, 2012, her alleged onset date. AR 116.

At step two, the ALJ determined Plaintiff suffers from the severe impairments of ischemic heart disease, anxiety disorder, and affective mood disorder. AR 116.[2] At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 117-118.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with additional limitations. [Plaintiff] is able to lift and/or carry, and push and/or pull, fifty pounds occasionally and twenty-five pounds frequently. [Plaintiff] is able to stand and/or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday, all with normal breaks. [Plaintiff] can perform simple tasks with routine supervision. She can relate to supervisors and peers on a superficial work basis. She cannot effectively relate to the general public due to anxiety and poor personality functioning. [Plaintiff] is able to adapt to a work situation.

AR 118-123. The ALJ determined Plaintiff was capable of performing past relevant work as a cook helper. AR 123. Further, relying on the testimony of a vocational expert (VE), the ALJ found there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform—hand packager, laundry worker, warehouse worker, laundry sorter, mail

---

[2] The ALJ also found Plaintiff had non-severe impairments of back pain and status post elbow surgery. AR 117.

room clerk, and assembler.  AR 124.  The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act.  AR 125.

## III.    Issues Presented for Judicial Review

Plaintiff asserts the following errors: (1) the Appeals Council (AC) failed to consider certain records submitted after the ALJ's decision; (2) the ALJ utilized the term "simple" in the RFC; (3) the ALJ did not properly consider Plaintiff's pain; (4) the ALJ impermissibly "played doctor;" (5) the ALJ failed to consider Plaintiff's obesity; and (6) the ALJ improperly determined Plaintiff could perform past relevant work and other jobs in the national economy.  Pl.'s Br. in Chief (Pl.'s Br.) [Doc. No. 13].

## IV.    Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).  The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).  While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own

judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.   Analysis

### A.   Evidence Submitted After the Hearing Was Properly Considered

Plaintiff contends the AC failed to consider new and material evidence it received after the ALJ issued the decision.[3]  Specifically, Plaintiff asserts the documents contained in Exhibits 23F and 24F should have been considered by the AC.[4]  Pl.'s Br. 4-5.  This argument fails because the AC explicitly considered Exhibits 23F and 24F.[5]  Instead, in the section under the heading "What We Considered," the AC stated: "In looking at your case, we considered the additional evidence listed on the enclosed Order of Appeals Council.  We considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.  We found that this information does not provide a basis for changing the [ALJ's] decision."  AR 2.  The Order of Appeals Council plainly indicates that the "additional evidence" refers to Exhibits 23F and 24F.  AR 6.  Thus, it is clear that the AC considered the very evidence at the root of Plaintiff's assertion of error.  As such, reversal is not warranted based on this argument.

---

[3] The Court addresses this argument first because if Plaintiff is correct and the AC failed to consider new, material, and chronologically relevant evidence, remand would be required.  *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

[4] Plaintiff's brief states that the AC did not consider the medical records "exhibited at 22F and 23F."  Pl.'s Br. 4.  However, Plaintiff cites AR 866-883, which constitute Exhibits 23F and 24F.  Exhibit 22F was contained in the record at the time the ALJ made a decision.  *See* AR 130 (listing exhibits to ALJ's decision).

[5] Plaintiff appears to have erroneously believed that Exhibits 23F and 24F were medical records dated between December 2, 2014 and November 30, 2015 that the AC explicitly did not consider.  AR 2.  Plaintiff does not contend that the records dated between December 2, 2014 and November 30, 2015 should have been considered by the AC.

Plaintiff further contends the AC erred in failing to consider medical records submitted after the decision. Citing to a September 2, 2014 nurse visit reflecting an increase in chest pain and panic attacks, *see* Pl.'s Br. 5, Plaintiff asserts that the ALJ may have been swayed to come to a different conclusion regarding the severity of Plaintiff's pain had the he reviewed this record. Pl.'s Br. 5. Here too, Plaintiff's argument is misplaced. Having stated that the medical documentation was made part of the record, the AC made an "implicit determination [that Plaintiff] had submitted qualifying new evidence for consideration." *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). As such, those documents become part of the record and the court assesses them in evaluating the Commissioner's denial of benefits under the substantial-evidence standard. *See Chambers*, 389 F.3d at 1142; *see also O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (holding "the new evidence becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence"). In other words, the Court reviews these documents as part of its ordinary analysis. *See Long v. Colvin*, No. 12-CV-168-TLW, 2013 WL 5432360, at *8 (N.D. Okla. Sept. 27, 2013) ("The Court is not automatically required to remand the case for the ALJ to reconcile any conflicts between the ALJ's findings and the new evidence."). Plaintiff's contention that this analysis would constitute an impermissible reweighing of the evidence is, therefore, incorrect. On this, the Court finds that the AC's determination was based on substantial evidence, and there is no error.

## B. The ALJ Did Not Err With Regard to the Use of the Term "Simple"

Plaintiff alleges the ALJ erred by utilizing the phrase "the claimant can perform simple tasks with routine supervision" because it was improper to use the word "simple" in the RFC. Pl.'s Br. 2. Plaintiff attempts to support this proposition with quoted material from *Barnett v. Apfel*, 321 F.3d 687, 690 (10th Cir. 2000). As Defendant correctly points out in her response brief, the

quoted material is not contained in *Barnett*.[6]  The Court notes, however, that the quotation is contained in *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.5 (10th Cir. 2012).  Moreover, *Chapo* does not support Plaintiff's argument that a blanket prohibition of the term "simple" was improper.  The court in *Chapo* indicated that the ALJ may find it proper to include a restriction to "simple work" again on remand.  *See id.* at 1292.  As such, the Court finds no error.

Plaintiff also asserts the ALJ did not consider Plaintiff's limited ability with regard to carrying out detailed instructions when formulating the RFC.  Pl.'s Br. 3.  The ALJ gave great weight to and adopted the opinions of the Oklahoma Disability Determination Division (ODDD) physicians (i.e., state reviewing physicians).  AR 123.  Those opinions found Plaintiff to be markedly limited in carrying out detailed instructions, but not significantly limited in the ability to carry out very short and simple instructions.  AR 193, 223.  In the narrative explanation of the mental RFC, the state agency consultants opined that Plaintiff could "perform simple tasks with routine supervision." AR 194, 224.[7]

The Tenth Circuit found no error where, as here, the ALJ adopted the consultant's narrative explanation in the RFC determination but did not include a specific reference to marked limitations.  In *Nelson v. Colvin*, 655 F. App'x 626 (10th Cir. 2016) (unpublished), the Tenth

---

[6] Mr. Mitzner is cautioned that attributing quotations to the wrong case is a practice which misleads the Court.  Mr. Mitzner has previously been admonished for "failing to meet the high standards and obligations for the practice of law in the Western District of Oklahoma."  *See Gaines v. Berryhill*, No. CIV-15-1251-M (W.D. Okla.) (Order [Doc. No. 26] May 10, 2017).

[7] The finding of marked limitations for carrying out detailed instructions was part of a series of questions to "help determine the individual's ability to perform sustained work activities" and "is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation)." AR 193, 223.  "However, the actual mental residual functional capacity assessment is recorded in the narrative discussions(s), which describes how the evidence supports each conclusion." *Id.*

Circuit found that the consultant's RFC narrative "adequately captured" the consultant's ratings of marked limitations in the "ability to understand and remember detailed instructions" where the narrative limited the claimant to "carrying out simple instructions with routine supervision[.]" *Id.* at 629. As the Tenth Circuit concluded in *Nelson*, even though the consultant rated the claimant as markedly limited in the ability to remember and carry out detailed instructions, "unskilled work does not require these abilities[.]" *Id.* Therefore, "by limiting [the claimant] to unskilled work, the ALJ effectively accounted for *all* the limitations noted" in the consultant's rating of limitations. *Id.* As in *Nelson*, the step-four and step-five jobs relied upon by the ALJ in this case are all unskilled jobs.[8] AR 123-124. The ALJ's RFC limitation to "simple tasks with routine supervision" adequately accounts for Plaintiff's mental limitations and is supported by substantial evidence. Accordingly, Plaintiff fails to demonstrate any error in the ALJ's mental RFC determination.[9]

---

[8] The jobs identified by the VE and relied upon by the ALJ at steps four and five have a specific vocational preparation (SVP) of 2. AR 123-124. SVP 2 work is considered "unskilled." *See* SSR 00-4p, 2000 WL 1898704 at *3 ("unskilled work corresponds to an SVP of 1-2"). Unskilled work generally requires only the ability to: (1) understand, remember and carry out simple instructions; (2) make judgments commensurate with the functions of unskilled work, i.e., simple work-related decisions; (3) respond appropriately to supervision, co-workers and usual work situations; and (4) deal with changes in a routine work setting. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015).

[9] Plaintiff also contends that the following statement from the decision is not supported by substantial evidence of record: "Furthermore, the evidence submitted after the formation of [the ODDD physicians'] opinions does not support any greater limitations than those identified in the above RFC finding." Pl.'s Br. 4 (*citing* AR 123). Plaintiff does not cite any authority or otherwise address the evidence upon which she relies to support this claim. Due to a lack of development, Plaintiff has waived any claim of error related to this unsupported statement. *See Keyes–Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those . . . contentions that have been adequately briefed for review."); *Paulek v. Colvin*, 662 F. App'x 588, 593 (10th Cir. 2016) (unpublished) ("It is [the plaintiff's] obligation to put forth specific points of error for [the court's] consideration.").

**C.      The Pain Analysis Conducted by the ALJ Was Substantially Supported**

Plaintiff contends the ALJ erred in his consideration of Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms—i.e., the credibility analysis. Credibility determinations by the trier of fact are given great deference.  As the Tenth Circuit has acknowledged:

> The ALJ enjoys an institutional advantage in making [credibility determinations].  Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).  An ALJ's assessment of a claimant's credibility will "not be upset if supported by substantial evidence."  *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).

In addition to the objective medical evidence, an ALJ considers the following factors when evaluating a claimant's credibility:

1.  The individual's daily activities;

2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.   Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96–7p, 1996 WL 374186, at *3;[10] *see also* 20 C.F.R. §§ 404.1529(c), 415.929(c); *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004). But "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," a "formalistic factor-by-factor recitation of the evidence" is not required. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000). On judicial review "common sense, not technical perfection" governs whether the ALJ complied with this requirement. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

Referring to the seven factors outlined above, Plaintiff claims "the ALJ did not properly follow *all* of the factors required which left his analysis incomplete." Pl.'s Br. 7 (emphasis in original). Instead, Plaintiff alleges "at best, it can be said this ALJ did make the first two findings for only 2 of the required 7 factors." Pl.'s Br. 7. The Court disagrees—it appears from the ALJ's thorough discussion of the evidence that he touched on the seven factors. While the ALJ did not address each factor in a formal manner, as stated above, such formality is not required.

Plaintiff also contends that it was error to "use the same, exact evidence as both pro and con, sword and shield." Pls.'s Br. 7. Specifically, Plaintiff takes issue with the ALJ's use, on one hand, of her statements about her social life, activities of daily living, and ability to concentrate to show that she did not meet a listed impairment, but, on the other hand, then "determin[ed] that her

---

[10] Plaintiff urges the Court to apply SSR 16-3p, a social security ruling which superseded SSR 96-7p effective March 28, 2016—after the ALJ reached his decision. Defendant urges the Court to utilize the older SSR 96-7p because the newer ruling does not require retroactive application. Def.'s Br. 9, n. 5. The purpose of the new ruling is to remove the term "credibility" in order to remain consistent with the regulations which do not use the term and to clarify that an evaluation of symptoms is not a character evaluation. *See* SSR 16-3p, 2016 WL 1119029, at *1. Plaintiff does not allege that the ALJ improperly evaluated her character. Both SSR 96-7p and SSR 16-3p require the ALJ to draw conclusions supported by the evidence, and the Court does not see a meaningful distinction between the two rulings as they relate to this matter. As such, the Court's decision would be the same under either ruling.

statements[,] . . . all of them, were not credible."[11]  *Id.*  Plaintiff is incorrect—the ALJ did not

determine that all of Plaintiff's statements were not credible, instead he found that "Claimant's

statements concerning the intensity, persistence, and limiting effects of these symptoms **are not**

**entirely credible** for the reasons explained in this decision" and that he "does not discount all of

[Plaintiff's] complaints."  AR 120, 123 (emphasis added).

Plaintiff also argues that the ALJ must "show[] this Court what was and was not credible

in [Plaintiff and her husband's] statements."    Pl.'s Br. 7.  The ALJ summarized Plaintiff's

testimony, including: household chores cause her pain; she experiences chest pain and skipped

heart beats; she experiences panic attacks; she has low energy; she has crying spells; she reported

weakness in her lower back; she cannot carry with her right arm.  AR 119.[12]  Then, the ALJ

referenced medical evidence which cast doubt on the intensity, persistence, and limiting effects of

such physical symptoms: Dr. Williams indicated there was no tenderness on the paraspinal muscle

areas from the neck through the lumbar spine, found no restriction of motion in the lumbar spine,

and found Plaintiff had no difficulty getting up and down from a seated position; and Dr. Lim

found that her cardiac examination was normal, found Plaintiff was able to exercise, and noted her

EKG showed a normal sinus rhythm.  AR 120-122.  With regard to her mental symptoms, the ALJ

noted Plaintiff did not exhibit anxiety at an appointment with Dr. Smithton and her depression

appeared to be situational in nature.  AR 121.  Therefore, the ALJ presented evidence from

---

[11] Plaintiff also stated that the ALJ found her husband's statements entirely not credible.  First, the ALJ found Plaintiff's husband's statements should "not [be] given much weight."  AR 120. Second, Plaintiff's husband's statements were not utilized at all when determining whether Plaintiff's impairments met a listing.  *See* AR 117-118.

[12] The ALJ also summarized the substance of her husband's completed Function Report.  AR 119-120.  The ALJ discounted the function report by the function report based on a May 2, 2013 function report by Dr. Smithton which contradicted Plaintiff's husband's report.  AR 122, 724.

Plaintiff's treating medical providers which cast doubt on the symptoms alleged by Plaintiff. Because the ALJ presented the evidence upon which he relied with regard to his credibility finding, the Court finds no error in the credibility analysis. *See Qualls*, 206 F.3d at 1372 ("So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," the requirement that an ALJ link his credibility findings to the evidence is "satisfied.").

###### D.    The ALJ Did Not "Play Doctor"

Plaintiff also contends the ALJ "impermissibly play[ed] doctor" by "making his own medical determinations" contrasting with physicians' findings. Pl.'s Br. 8-10.[13] More specifically, Plaintiff takes issue with the following statement contained in the ALJ's decision: "The findings from examination do not support the alleged severity of [Plaintiff's] complaints. Additionally, this evidence does not support any limitations other than those identified in the above RFC finding." *Id.* at 8. This statement (and the similar statements to which Plaintiff objects), does not reject findings by doctors,[14] but instead stands for the proposition that the medical evidence does not support the level of severity of the impairments alleged by Plaintiff. Thus, it does not appear from the decision that the ALJ "played doctor" as Plaintiff suggests.[15]

---

[13] In the process, Plaintiff appears to encourage the Court to reweigh (or perhaps reject) the evidence with regard to Dr. Smithton's finding that Plaintiff's depression was situational. Pl.'s Br. 8. The Court refuses to do so, as it may not substitute its own judgment for that of the Commissioner. *Bowman*, 511 F.3d at 1272.

[14] Indeed, the ALJ summarized the entire "Functional Assessment" from Dr. Williams' Consultative Examination Report. *Compare* AR 120 *with* AR 616.

[15] Plaintiff also claims "the ALJ failed to properly follow the rules for rejecting a treating opinion." Pl.'s Br. 10. The Court need not analyze this contention in detail because it does not find that the ALJ rejected a treating opinion.

### E.    Obesity

Plaintiff asserts the ALJ erred by not addressing her obesity (or weight) in the decision. Pl.'s Br. 10-12.  Plaintiff contends the record reflects she was obese due to her being between 31.1 and 34.7 on the body mass index scale.  Pl.'s Br. 10-11.  Plaintiff argues that the ALJ's "failure to properly analyze a severe impairment when he does find a severe impairment that is directly related to weight is error."  Pl.'s Br. 11.  Plaintiff clarifies that the severe impairment to which she refers is ischemic heart disease.  *Id.*  She contends where a person has chest pain and a cardiac disorder such as ischemic heart disease, the ALJ "needs to discuss the relationship of weight with the severe impairment." *Id.*  Plaintiff, however, does not cite to any specific case law regarding the alleged requirement that an ALJ discuss the relationship between weight and a cardiac disorder.  Instead, Plaintiff contends that SSR 02-1p[16] requires the ALJ to evaluate the effects of obesity when assessing RFC.

Plaintiff did not identify obesity in her disability application or when submitting function reports to the agency.  AR 352-360 (application), 369-376 (10/23/12 function report), 386-393 (7/30/13 function report).  Obesity, however, can be identified as a medically determinable impairment whether or not a treating source or consultative physician expressly diagnoses a claimant with the condition.  *See* SSR 02–1p, 2002 WL 34686281, at *3 (Commissioner ordinarily relies on treating sources or consultative physician, but if the evidence does not include a diagnosis of obesity, the agency will use its judgment in most cases to establish the presence of obesity where the records show a consistently high body weight or BMI).

---

[16] SSR 02-1 is a ruling providing guidance on the Social Security Administration's policy concerning the evaluation of obesity in disability claims.  SSR 02-1p, 2002 WL 34686281.

"[A]n ALJ is generally entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (further finding that "the record in this case demonstrates that the ALJ exercised good judgment in refusing to delve more deeply into the mental impairments Claimant now emphasizes on appeal"). Here, Plaintiff was represented by counsel at the hearing in front of the ALJ. Neither the prehearing brief nor the hearing transcript referenced obesity. AR 131-156 (hearing transcript), 414-420 (prehearing brief). Nevertheless, the ALJ stated he gave careful consideration to the entire record. AR 116, 118. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (noting the well-established principle of taking ALJ at her word when she indicates she considered all of the evidence).

What is more, Plaintiff does not specify how obesity impaired her ability to work. Without citation to any evidence in the record, Plaintiff only broadly suggested in her brief that obesity may have an effect on her chest pain and a cardiac disorder such as ischemic heart disease. This case is similar to *Romero v. Astrue*, 242 F. App'x 536, 542 (10th Cir. 2007) (unpublished), where the court found no error where the plaintiff did not allege disability based on obesity, the ALJ did not list obesity as a severe impairment, the plaintiff's doctors did not identify any specific restriction on her ability to work due to obesity, she did not identify any such restrictions at the hearing, and her weight was similar to what it was at the time she was working.[17]

Furthermore, to the extent the ALJ did err, such error is harmless. In a case from the United States Court of Appeals for the Seventh Circuit, the court found a failure on the part of an ALJ to consider obesity was harmless because obesity "factored indirectly into the ALJ's decision as part

---

[17] On April 4, 2011, when Plaintiff was working, she was 5'4" and weighed 181 pounds. AR 425. Her BMI was 31.1 at that time, which is considered obese. *See* SSR 02-1p, 2002 WL 34686281, at *2 (an individual with a BMI of 30.0 or more is considered obese).

of the doctors' opinions" where: (1) the ALJ adopted limitations suggested by doctors aware of obesity; and (2) the plaintiff failed to specify how obesity impaired his ability to work. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). In another Seventh Circuit case, a court found any error related to the ALJ's failure to address obesity to be harmless where a number of medical reports relied upon by the ALJ noted the plaintiff's height and weight and where the ALJ "specifically predicated his decision upon the opinions of physicians who did discuss her weight." *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). Here, any error is harmless as well.

The ALJ adopted the medical opinions of the ODDD physicians. At the initial level of the state review process, the doctor addressing the RFC noted Plaintiff's height (62.5"), weight (189 lbs.), and BMI (34) in the "RFC – Additional Explanation" section. AR 192, 205. At the reconsideration level of the state review process, the doctor addressing Plaintiff's RFC again referenced Plaintiff's height, weight, and BMI. AR 222, 239. Further, the ALJ's decision discusses medical records which contain Plaintiff's height and weight. AR 120-122 (relevant portions of the decision), 617 (listing height and weight), 686 (listing height, weight, and BMI), 694 (listing height and weight), 704 (listing height, weight, and BMI). Thus, it is clear that the ALJ adopted limitations suggested by doctors who were aware of obesity.

For the reasons stated above, there is no reversible error with regard to the ALJ's consideration of obesity.

## F.     The ALJ's Analysis at Step Five Does Not Warrant Reversal

Plaintiff also argues that Plaintiff's RFC is inconsistent with her past relevant work and the jobs identified at step five. Pl.'s Br. 3. Specifically, because these jobs all have a reasoning level of two or higher, Plaintiff argues they are incompatible with "the 'simple jobs RFC' of the ALJ" because "[r]easoning level 2 jobs are detailed jobs." *Id.* The ALJ did not find, however, that

Plaintiff could only perform "simple jobs."  He found that Plaintiff was limited to performing "simple tasks with routine supervision."  An RFC limiting a claimant to "simple tasks with routine supervision" can perform jobs with a reasoning level of two.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("[L]evel-two reasoning appears more consistent with Plaintiff's RFC [limiting Plaintiff to simple and routine work tasks]."); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) ("[A] limitation 'for simple and routine work tasks' . . . [is] consistent with the demands of level-two reasoning.").  Therefore, there is no error with regard to the level-two jobs.

Plaintiff further asserts that one of the jobs identified at step five, mail room clerk, has a reasoning level of three.  Pl.'s Br. 3.  Even if Plaintiff's limitations precluded her from performing the job of mail room clerk,[18] the error would be harmless.  Indeed, the analysis need not proceed to step five because the ALJ found Plaintiff could perform her past relevant work at step four.  AR 123.  But even if the analysis were required to proceed to step five, the ALJ found five other jobs with level-two reasoning which the VE testified Plaintiff could perform: hand packager, laundry worker, warehouse worker, laundry sorter, and assembler.  AR 124.  Thus, the error is harmless at step five.  *See Duncan v. Colvin*, 608 F. App'x 566, 577 (10th Cir. 2015) (unpublished) (finding error harmless when hypothetical posed to the VE did not contain a limitation that was included in the RFC because two of three jobs the VE testified plaintiff could perform were consistent with the restriction); *Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (unpublished) (finding harmless error when ALJ did not pose his own restriction to the VE when two of the four jobs identified by the VE were consistent with the restriction).

---

[18] In *Hackett*, the Tenth Circuit found that an RFC limiting a claimant to "simple and routine work tasks" appeared inconsistent with jobs requiring a reasoning level of three and remanded the case to allow the ALJ to address the apparent conflict.  *Hackett*, 395 F.3d at 1176.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by June 29, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 15th day of June, 2017.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE